United States District Court
Southern District of Texas
**ENTERED**
November 18, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EDUARDO VELA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00193 |
| | § | |
| DOCTOR PRESLEY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

Plaintiff Eduardo Vela, a federal detainee currently confined at the Coastal Bend Detention Center (CBDC) in Robstown, Texas, has filed this prisoner civil rights action. Plaintiff has been granted leave to proceed *in forma pauperis*. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening and the reasons set forth below, the undersigned recommends that Plaintiff's deliberate indifference claims against Defendants be **DISMISSED with prejudice** for failure to state a claim for relief. The undersigned further respectfully recommends that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

On December 18, 2018, Plaintiff was convicted in this Court of transporting an undocumented alien and sentenced to forty-one months in prison with two years of supervised release.  (Criminal Case No. 2:18-CR-282, D.E. 62).  Plaintiff was subsequently arrested pursuant to a warrant alleging Plaintiff had violated the conditions of his supervision by transporting an undocumented alien on or about May 7, 2021.  (Criminal Case No. 2:18-CR-282-1, D.E. 90; Criminal Case No. 2-21-CR-466-1, D.E. 1).  On May 26, 2021, Plaintiff was indicted on one count of transporting an undocumented alien on or about May 7, 2021. (Criminal Case No. 2-21-CR-466-1, D.E. 8).  Plaintiff's jury trial is set to begin before United States District Judge Nelva Gonzales Ramos on December 13, 2021. (Criminal Case No. 2-21-CR-466-1, D.E. 25).

Plaintiff's allegations arise in connection with his stay as a federal pretrial detainee at the CBDC.  Plaintiff sues Doctor Presley (Dr. Presley), the United States Marshal Service (USMS), and The GEO Group, Inc. Corporation (GEO Group).  Plaintiff generally claims that Defendants have acted with deliberate indifference to his serious medical needs related to numbness in his feet, problems with urinating, and an ear infection.  Plaintiff seeks monetary relief.  (D.E. 1, p. 5).

On September 29, 2021, the undersigned conducted a *Spears*[2] hearing where Plaintiff was given an opportunity to explain his deliberate indifference claims.   The following representations were made either in Plaintiff's Original Complaint (D.E. 1) or at the *Spears* hearing.   Plaintiff is fifty-seven years old, weighs 243 pounds, and stands 5'7" tall.   (D.E. 10, p. 8).   Plaintiff arrived at the CBDC on May 8, 2021 and has been in continuous custody there through the present day.

Before being taken into custody at the CBDC, Plaintiff underwent oral surgery in February, 2021 due to bacteria causing his face to swell.   During the course of his surgery, the surgeon broke a bone in Plaintiff's oral facial area. (D.E. 10, pp. 9-10).   Plaintiff is scheduled for additional oral surgery to address the broken facial bone.   Since the previous oral surgery in February 2021, Plaintiff's health has deteriorated.   According to Plaintiff, the bacteria has remained in his oral cavity.   (D.E. 10, pp. 10-11).   Plaintiff also suffers from numbness in his feet, which he alleges was caused by an allergic reaction to the antibiotics prescribed after the surgery.   (D.E. 10, p. 11).

On May 10, 2021, Plaintiff submitted a medical slip to CBDC personnel complaining about numbness in the toes on his right foot.   Plaintiff further complained about problems with urinating.   (D.E. 10, p. 16). On May 16, 2021, Plaintiff submitted another medical slip stating that the numbness had spread to both feet and toes.   That same day, Dr. Pressley saw Plaintiff and indicated that he was going to refer Plaintiff to see a

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

urologist.  (D.E. 10, pp. 16-17).  However, Dr. Presley ultimately prescribed Plaintiff with the medication Amitriptyline (Elavil), which Plaintiff took for over thirty days with no relief.  (D.E. 1, p. 12; D.E. 10, p. 17).

On June 17, 2021, Dr. Presley directed CBDC personnel to take Plaintiff to the emergency room after Plaintiff reported having no feeling in his groin area and had urinated on himself.  (D.E. 1, p. 12; D.E. 10, p. 24).  The nurse and doctor at the emergency room asked Plaintiff why he was taking Elavil because it was the wrong medication.  The emergency room doctor referred Plaintiff to a neurologist.  (D.E. 1, p. 12; D.E. 10, p. 25).  On August 10, 2021, Plaintiff continued to urinate on himself due to numbness.  Plaintiff, however, was not seen by a neurologist.  Plaintiff testified at the *Spears* hearing that Dr. Presley indicated he would be seen by a urinary tract specialist.  (D.E. 10, pp. 17, 25).

On June 7, 2021, Plaintiff submitted a medical request complaining about an ear infection caused by the bacteria returning to his oral cavity.  (D.E. 10, pp. 11-12)  On June 13, 2021, Plaintiff showed Sergeant Galvan that "black stuff" was coming out of Plaintiff's right ear.  (D.E. 10, p. 12).  On June 17, 2021, after submitting another medical request, Dr. Presley saw Plaintiff and flushed his right ear but could not remove all of the fungus.  The fungus spread to Plaintiff's left ear.  (D.E. 10, p. 12).  Dr. Presley gave Plaintiff an ear solution which Plaintiff alleges was not affective in resolving the problem with his ear.  (D.E. 1, p. 12).

On June 24, 2021, Plaintiff submitted another medical request.  Dr. Presley again flushed both of Plaintiff's ears and was able to remove fungus from Plaintiff's left ear.

(D.E. 10, p. 12).  Plaintiff's right ear, however, emitted a foul odor.  On or around July 5, 2021, after Plaintiff submitted another medical request, Dr. Presley flushed Plaintiff's ears for a third time.  (D.E. 10, p. 13).  Dr. Presley ordered an emergency solution which Plaintiff alleges did not get approved by the USMS.  (D.E. 10, p. 13).  Dr. Presley then prescribed oral medication.  Plaintiff took the medication in late July 2021 with no positive results.  (D.E. 1, p. 12).  Plaintiff alleges he could not hear out of his right ear as of August 10, 2021, and his left ear had fungus again.  (D.E. 1, p. 12).

After Plaintiff submitted another grievance, Plaintiff was transported to a private medical facility to see Dr. Zane, a private ear, nose, and throat (ENT) doctor.  (D.E. 10, p. 14).  Dr. Zane showed Plaintiff the fungus in his ears and proceeded to clean out Plaintiff's ears.  After giving Plaintiff a hearing test, Dr. Zane diagnosed Plaintiff as having permanent hearing loss mainly in his right ear.  (D.E. 10, p. 15).

Plaintiff testified that he has been seen and treated at the medical department on seven occasions since arriving at the CBDC on May 8, 2021.  (D.E. 10, p. 22).  Plaintiff was seen by Dr. Presley on six of those occasions.  (D.E. 10, p. 22).

Plaintiff sues the GEO Group on the basis that the CBDC's medical department is understaffed.  (D.E. 1, p. 13; D.E. 10, p. 27).  Plaintiff complains that the USMS has participated by: (1) allowing for Plaintiff to receive the wrong medication for his numbness; (2) denying him the right to see a neurologist by denying him the appointment; and (3) not approving the emergency ear solution for Plaintiff.  (D.E. 1, p. 13) D.E. 10, pp. 27-28).  Plaintiff, however, testified that he did not know for a fact that his request to see a

neurologist was rejected.  (D.E. 10, p. 27).  In addition to monetary relief, Plaintiff clarified at the *Spears* hearing that he also seeks injunctive relief in the form of additional medical care.  (D.E. 10, pp. 28-29).

## III.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless."  *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but

whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id*.; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

## IV.   DISCUSSION

### A.  Private Actors

To state a claim for relief under § 1983, a plaintiff is required to allege that he was deprived of a constitutional right by those acting under the color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).  A *Bivens*[3] action is analogous to an action under § 1983, except that it applies to constitutional violations by federal, rather than state, actors. *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005). Plaintiff generally claims that Defendants have acted with deliberate indifference to his serious medical needs in violation

---

[3] *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

of the Eighth Amendment.  Plaintiff specified on the complaint form that he brings this action against federal officials under *Bivens*.  (D.E. 1, p. 3).

Two of the defendants named by defendants, however, are private actors.  First, the GEO Group is a private entity that operates the CBDC.  *See Barnett v. GEO Group, Inc*., No. 1:15-CV-224, 2017 WL 3896363, at *3 (N.D. Tex. Aug. 10, 2017) (explaining that the GEO Group "is a private company that operates numerous prison facilities throughout the United States").  Second, Plaintiff states that Dr. Presley is an employee of the GEO Group. (D.E. 1, p. 2).  Dr. Presley, therefore, is also a private actor.

Because the GEO Group and Dr. Presley are private actors, they are not subject to suit or liable under either *Bivens* or § 1983.  *See Minneci v. Pollard*, 565 U.S. 118, 131 (2012); *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 63-64 (2001); *Ayala-Gutierrez v. Doe*, 697 F. App'x 285, 286 (5th Cir. 2017); *Eltayib v. Cornell Companies, Inc.*, 533 F. App'x 414, 414-15 (5th Cir. 2013); *Faseler v. Coastal Bend Detention Center*, No. 2:16-CV- 457, 2017 WL 387197, at *3-4 (S.D. Tex. Jan. 27, 2017).  *See also Tavares v. Lasalle Corr. Emerald Correctional Management West Texas Detention Center*, No. EP-17-CV-289, 2018 WL 2452977, at *3 (W.D. Tex. May 31, 2018) (holding that a § 1983 claim brought by a federal pretrial detainee housed in a prison facility operated by a private corporation should be dismissed).  Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against these defendants be dismissed with prejudice on this basis.

## B.      Federal Agency

Plaintiff also brings this action against the USMS, which is a federal law enforcement agency.  A federal agency such as the USMS "cannot be held liable under *Bivens*."  *Mireles v. MTC Willacy County Regional Detention Facility*, No. 1:19-cv-197, 2020 WL 4678433, at *6 (S.D. Tex. 2020) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 484-86 (1994)).  Because Plaintiff cannot bring this action against the USMS, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against the USMS be dismissed with prejudice on this basis.

## C.      New Context

Plaintiff has not named an individual USMS as a defendant or otherwise presented any allegations to suggest that any official providing him with medical care at the CBDC is a federal actor.  Nevertheless, even if he could amend his complaint and present such allegations against an individual federal actor, this action remains subject to dismissal.

The Supreme Court recognizes only three valid *Bivens cases*.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017).  The *Tavares* court explains these three types of cases as follows:

> First, in *Bivens* itself, the Supreme Court recognized an implied damage action to compensate persons injured by federal officers in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures.  *Id.* at 1854.  Second, in *Davis v. Passman*, the Supreme Court recognized a *Bivens* remedy for a Fifth Amendment gender-discrimination case.  442 U.S. 228 (1979).  Finally, in *Carson v. Gregg*, the Supreme Court recognized a *Bivens* remedy for an Eighth Amendment Cruel and Unusual Punishment Clause case.  446 U.S. 14 (1980).  Outside of these three unique circumstances, the Supreme Court views new *Bivens* claims with disfavor.

*Abbasi*, 137 S. Ct. at 1857.  For over 30 years[,] the Supreme Court has consistently refused to extend *Bivens* into new context.  *Id.* (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

*Tavares*, 2018 WL 2452977, at *3.

"[C]ourts must therefore take a cautious approach and avoid expanding *Bivens* beyond its recognized contexts[.]"  *Mireles*, 2020 WL 4678433, at *7.  In determining whether a *Bivens* remedy is available, the Fifth Circuit Court of Appeals instructs:

> [C]ourts must first assess whether [plaintiff's] claims present a new *Bivens* context.  If so, there are two circumstances where *Bivens* does not recognize an implied cause of action for constitutional violations.  First, *Bivens* claims are unavailable if there are special factors counseling hesitation in the absence of affirmative action by Congress.  Second, *Bivens* remedies may be foreclosed by congressional action where an alternative existing process for protecting the interests amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.

*Butts v. Martin*, 877 F.3d 571, 587-88 (5th Cir. 2017) (internal quotation marks and citation omitted).  "Because of these considerations, 'courts may not create [a cause of action], no matter how desirable that might be as a policy matter.'"  *Mireles*, 2020 WL 4678433, at *7 (quoting *Alexander v, Sandoval*, 532 U.S. 275, 286-87 (2001)).

As a federal pretrial detainee, Plaintiff's deliberate indifference claims implicate the Fifth Amendment and not the Eighth Amendment.  *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) ("[P]retrial detainees are protected by the due process clause of the Fifth and Fourteenth Amendments."); *Baker v. Putnal*, 75 F.3d 190, 198–99 (5th Cir. 1996) ("Pre-trial detainees may not bring a cause of action based on the Eighth Amendment."); *Belfrey-Farley v. Palmer*, No. 3:19-cv-1305, 2021 WL 2814885, at *2

(N.D. Tex. May 7, 2021) ("[F]ederal pretrial detainees' rights flow from the Fifth Amendment due-process clause and not the Eighth Amendment.").   The Supreme Court recognized in *Ziglar* that, while a federal pretrial detainee's claims arising under the Fifth Amendment is similar to a *Bivens* action brought by a federal convicted inmate under the Eighth Amendment for deliberate indifference, such claim nevertheless constitutes a "new context inquiry" in that "even a modest extension is still an extension." *Ziglar*, 137 S. Ct. at 1864-65.

In such a "new context" scenario, "courts should determine whether 'there is an alternative remedial structure present in a certain case, [since] that alone may limit the power of the judiciary to infer a new *Bivens* cause of action.'"  *Mireles*, 2020 WL 4678433, at *7 (quoting *Ziglar*, 137 S. Ct. at 1858).  "When an alternative remedy is available, there is no need to expand *Bivens* based on a pretrial detainee's Fifth Amendment violation." *Mireles*, 2020 WL 4678433, at *7.  Similar to the Fifth Amendment claims brought by the federal pretrial detainee in *Mireles*, alternative remedies exist for Plaintiff to pursue his claims such as through appropriate administrative grievances as well as Texas tort law.  *Id.* at *8.

Because Plaintiff has other forms of relief available, the undersigned refrains from inferring a new *Bivens* action in the context of a Fifth Amendment claim brought by a federal pretrial detainee.  Accordingly, the undersigned respectfully recommends that this action be dismissed with prejudice on this basis.

### D.      Eighth Amendment Claims

Even assuming that Plaintiff possibly could assert Eighth Amendment claims of deliberate indifference in this *Bivens* action and out of an abundance of caution, the undersigned will address in the alternative whether Plaintiff has stated a claim for relief. An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  In order to state a deliberate indifference claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the  [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis in original).

The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. "Even proof of gross negligence does not establish deliberate indifference." *Levine v. Taylor*, No. 3:12-CV-186, 2017 WL 1215426, at *7 (S.D. Tex. Mar. 31, 2017) (citing *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013)).

Plaintiff claims that he has received constitutionally-inadequate treatment for his medical conditions related to numbness in his feet, inability to urinate, and the presence of an infection in his ears. He complains that Dr. Presley prescribed the wrong medication, Elavil, for his numbness issues and that the USMS interfered with his medical care by

allowing for the wrong medication to be prescribed, denying him the right to see a neurologist, and rejecting an emergency ear solution for Plaintiff initially prescribe by Dr. Presley. (D.E. 1, p. 13; D.E. 10, pp. 27-28).

Plaintiff's allegations reflect that: (1) since his arrival on May 8, 2021 at the CBDC, Plaintiff was seen and treated at the medical department on seven occasions for his various medical complaints; and (2) Plaintiff was seen by Dr. Presley on six of those occasions. (D.E. 10, p. 22). With regard to Plaintiff's specific complaints, starting on May 10, 2021, about numbness in his feet and difficulty urinating, Plaintiff further alleges that Dr. Presley saw Plaintiff on several occasions, prescribed Plaintiff with the medication Elavil, ordered that Plaintiff be taken to the emergency room after Plaintiff reported urinating on himself and having no feeling in his groin area, and ultimately referred Plaintiff to see a urinary tract specialist. (D.E. 1, p. 12; D.E. 10, pp. 16-17, 24-25). With regard to Plaintiff's complaints, starting on June 7, 2021, about his ear problems, Plaintiff's allegations reflect that: (1) Dr. Presley saw Plaintiff on several occasions between June and August 2021 where he flushed out Plaintiff's ears to remove the fungus growing inside and provided Plaintiff with ear solution as well as oral medications (D.E. 1, p. 12; D.E. 10, pp. 12-13); (2) when Plaintiff could not hear out of his right ear as of August 10, 2021, Plaintiff was referred to an outside ENT doctor for further treatment. (D.E. 10, pp. 14-15).

Accepting as true Plaintiff's allegations and testimony at the *Spears* hearing, neither Dr. Presley nor any individual USMS official provided treatment in wanton disregard for Plaintiff's serious medical needs. On the contrary, Plaintiff's allegations and testimony

reflect that medical officials, especially Dr. Presley, were responsive to Plaintiff's various medical complaints on numerous occasions. Plaintiff's dissatisfaction with the medical care provided him at the CBDC does not rise to the level of deliberate indifference. *See Whiting v. Kelly*, 255 F. App'x 896, 899 (5th Cir. 2007) ("Although [plaintiffs] clearly believe that they should undergo additional testing and drug therapies, such disagreement does not give rise to a constitutional claim.") (citations omitted); *Norton v. Dimazana*, 122 F.3d 286, 291–92 (5th Cir. 1997) (holding that an inmate's dissatisfaction or disagreement with the medical treatment he received does not state a claim for deliberate indifference); *Granger v. Tangipahoa Parish Jail*, 554 F. App'x 271, 272 (5th Cir. 2014) (Mem.) (unpublished) ("The fact that [the inmate] may be disappointed with the treatment he received or that he received unsuccessful treatment is insufficient to establish a constitutional violation."); *Evans v. Wright*, No. 6:14cv566, 2015 WL 5766862, at *6 (E.D. Tex. Sept. 29, 2015) (recognizing that "a disagreement between doctors does not equal denial of medical care or show deliberate indifference.").

Furthermore, even assuming additional drug therapies and a referral to a neurologist would have been beneficial to Plaintiff's medical conditions, Plaintiff's allegations at best suggest that the actions of Dr. Presley and the USMS amounted to nothing more than negligence and/or medical malpractice. Such allegations fail to state an Eighth Amendment claim of deliberate indifference. *See Gobert*, 463 F.3d at 346. Accordingly, the undersigned recommends in the alternative that Plaintiff's deliberate claims be dismissed with prejudice for failure to state a claim for relief.

## V.    RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), Plaintiff's deliberate indifference claims against Defendants be **DISMISSED with prejudice** on the following grounds: (1) the GEO Group and Dr. Presley are private actors who are not subject to suit or liable under either § 1983 or *Bivens*; (2) the USMS is a federal agency that cannot be held liable under *Bivens*; (3) the Court must refrain from inferring a new *Bivens* action in the Fifth Amendment context in connection with Plaintiff's deliberate indifference claims brought as a federal pretrial detainee; and (4) assuming that Plaintiff possibly could assert Eighth Amendment claims of deliberate indifference in this action, Plaintiff fails to state a deliberate indifference claim against Defendants.

It is respectfully recommended further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be **INSTRUCTED** to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

ORDERED on November 18, 2021.

Jason B. Libby
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).